# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 9:20-cv-00178 |
| | ) | Judge Michael Truncale |
| vs. | ) | |
| | ) | CONSENT DECREE AND |
| WOODVILLE PELLETS, LLC, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

_____

In accordance with the Court's Order Granting Joint Motion to Enter Consent

Decree [Dkt. 209], the Court hereby enters the following Consent Decree and Order:

Date lodged in Court: <u>November 17, 2021</u>

Date entered by Court: <u>January 28, 2022</u>

## CONSENT DECREE AND ORDER

WHEREAS, Sierra Club ("Plaintiff") brought this action (the "Complaint") against Woodville Pellets, LLC ("Defendant") (collectively, the "Parties") under the federal Clean Air Act (the "Act"), 42 U.S.C. § 7401, et seq., for declaratory and injunctive relief and assessment of civil penalties for certain alleged violations of the Act at the Woodville Pellets' wood pellet manufacturing facility at 164 County Road 1040, Woodville, Texas 75979 (the "Facility");

WHEREAS, the Facility was constructed in 2012 by German Pellets, LLC;

WHEREAS, Defendant has owned and operated the Facility since June 19, 2019, from which date Plaintiff alleges that the Facility has operated in violation of the Act;

WHEREAS, Plaintiff alleges that Defendant has violated federal and state permitting requirements at the Facility through unauthorized emissions of volatile organic compounds and hazardous air pollutants from the dry hammermills, pellet cooler units, and green hammermills; unauthorized release of pollutants from the bypass stacks; and continued operation following expiration of the Facility's Title V permit on September 20, 2020;

WHEREAS, Defendant denies Plaintiff's allegations and maintains that it is not liable for civil penalties or injunctive relief, and nothing herein shall constitute an admission of liability;

WHEREAS, the Texas Commission on Environmental Quality ("TCEQ") and Defendant have negotiated an Agreed Order resolving an enforcement action regarding the Facility under the authority of Texas Health & Safety Code ch. 382 and Texas Water Code

ch. 7 and have presented the Agreed Order to the TCEQ as the fully integrated agreement of TCEQ and Defendant with respect to Re: Woodville Pellets, LLC, Docket No. 2020-0449-AIR-E. The Agreed Order assesses a penalty in the amount of $517,068 against Defendant. Half of the penalty is conditionally offset based on Woodville's implementation and completion of a Supplemental Environmental Project ("SEP") in the form of a $258,534 contribution by Woodville to the "Texas Congress of Parents and Teachers dba Texas PTA" to help fund the "Texas PTA Clean School Bus Replacement Program." Woodville has remitted payment for the SEP to the Texas PTA and $258,534 to TCEQ in the amount of $258,534;

WHEREAS, the Parties desire to settle all matters by this Consent Decree and avoid the costs, delay, and uncertainty of litigation;

WHEREAS, the Parties agree that the settlement of this action through this Consent Decree without further litigation is in the public interest, and is a fair, reasonable, and appropriate means of resolving the matter;

WHEREAS, the Parties further anticipate that actions taken by the Defendant, consistent with this Consent Decree, will result in significant reductions of emissions from the Facility;

WHEREAS, pursuant to 42 U.S.C. § 7604(c)(3) of the Clean Air Act ("Act"), this Consent Decree is being forwarded to the United States Department of Justice and to the United States Environmental Protection Agency ("EPA") for the statutorily mandated forty-five (45) day review period; and

3

WHEREAS, the Parties consent to the entry of this Consent Decree without trial of any issues.

NOW, THEREFORE, it is hereby ORDERED AND DECREED as follows:

## I.      JURISDICTION, VENUE, AND APPLICABILITY

1.      This Court has jurisdiction over the Parties to and the subject matter of this action under Section 304 of the Act, 42 U.S.C. § 7604 and under 28 U.S.C. §§ 1331.

2.      Venue is proper in this Judicial District under Section 304(c) of the Act, 42 U.S.C. § 7604(c), and under 28 U.S.C. § 1391.

3.      The Parties consent to entry of this Consent Decree without further notice.

4.      Upon the Date of Entry, the provisions of this Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties.

5.      The Court shall retain jurisdiction of this case after entry of this Consent Decree to enforce compliance with the terms and conditions of this Consent Decree and to take any action necessary or appropriate for its enforcement.

6.      The provisions of this Consent Decree shall apply to and be binding upon Plaintiff and Defendant, and their successors, assigns, officers, employees, and agents solely in their capacities as such. In any action to enforce this Consent Decree, Defendant shall not assert as a defense the failure of its officers, directors, employees, servants, agents, or contractors to take actions necessary to comply with this Consent Decree, unless Defendant establishes that such failure resulted from a Force Majeure Event as defined in this Consent Decree.

## II.   DEFINITIONS

7.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, or regulations implementing the Clean Air Act, shall have the meaning set forth in the Clean Air Act or those regulations.

8.     Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

(a)     "Bypass Event" means any time any time Special Conditions 10 or 11 of Permit 98014 (April 8, 2021) (herein "SIP Permit 98014" attached hereto as Exhibit A) are violated or when (1) the dry hammermill and Cooler Air Aspiration System are operated without routing all filtered emissions to an operational RCO as described in Special Condition 10, or (2) dryers 1 and 2 are operated without routing all emissions to a WESP followed by an RTO as described in Special Condition 11, or (3) furnaces 1 and 2 are operated without routing all emissions to a WESP followed by an RTO. A "Bypass Event" does not include bypasses that are otherwise covered by Permit by Rule 106.263.

(b)     "Clean Air Act," "CAA," or "Act" shall mean the federal Clean Air Act, 42 U.S.C. §§ 7401-7671q, and its implementing regulations.

(c)     "Date of Entry" shall mean the date this Consent Decree is signed and entered by the United States District Court Judge.

(d)      "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Eastern District of Texas.

(e)      "EPA" shall mean the United States Environmental Protection Agency.

(f)      "Facility" shall have the meaning set forth in the recitals.

(g)      "Parties" shall have the meaning set forth in the recitals.

(h)      "RCO" shall mean a Regenerative Catalytic Oxidizer.

(i)      "RTO" shall mean a Regenerative Thermal Oxidizer.

(j)      "WESP" shall mean a Wet Electrostatic Precipitator."

(k)      "TCEQ" shall mean the Texas Commission on Environmental Quality.

### III.    COMPLIANCE AND REPORTING REQUIREMENTS

9.      Subject to Force Majeure Events, if within one-hundred-eighty (180) days from the Date of Entry, Defendant has not obtained a Federal Operating Permit under Title V of the Clean Air Act, Defendant shall cease operations of its Facility until such time that such permit is obtained.

10.      Subject to Force Majeure Events, Defendant agrees to install an RCO to control emissions from its Dry Hammermill and Cooler Air Aspiration System (as described in SIP Permit 98014) and have it operating no later than May 1, 2022.

11.      Subject to Force Majeure Events, no later than the earlier of (a) ninety (90) days after TCEQ's issuance of a permit authorizing construction, or (b) one-hundred-

6

eighty (180) days from the Date of Entry, Defendant agrees to fully enclose and keep under negative pressure the existing wet mills and existing conveyance from the wet mills to the dryers such that all emissions associated with the process will not be emitted from the existing stacks. The aspiration filters and cyclones associated with the wet mills will also be removed. All emissions from the wet mills will be routed to the existing dryers' exhaust stream, prior to the WESP and RTO. If TCEQ has not issued a permit authorizing the construction described in this Paragraph within ninety (90) days of the Date of Entry, Defendant may invoke the Force Majeure provisions in Section VIII of this Consent Decree to seek an extension of the 180-day deadline described in this Paragraph, if appropriate.

12.     As provided in Special Condition 25 of SIP Permit 98014, within sixty (60) days of achieving maximum production after start of operation of the RCO described in Paragraph 10, but no later than one-hundred-eighty (180) days after commencement of operation of the RCO, Defendant shall conduct a stack test for volatile organic compounds "VOC" to determine compliance with the Maximum Allowable Emission Rates Table ("MAERT limits") and the emission performance levels specified in SIP Permit 98014. Defendant shall supply Plaintiff and TCEQ with a copy of the stack test report within sixty (60) days after sampling is completed.

13.     Within sixty (60) days of achieving maximum production after routing emissions from the wet mills to the Facility's existing RTO as required by Paragraph 11, but no later than one-hundred-eighty (180) days after completing the work specified in Paragraph 11, Defendant shall conduct a stack test for VOCs to determine compliance

with the Maximum Allowable Emission Rates Table and the emission performance levels specified in the permit authorizing such construction. Defendant shall supply Plaintiff and TCEQ with a copy of the stack test report within sixty (60) days after sampling is completed.

14.    If either of the stack tests required by the previous Paragraphs show that the applicable MAERT limits or emission performance levels were violated, then within sixty (60) days of Defendant's receipt of the stack test report, Defendant shall present a report to Plaintiff describing its plan for resolving the violation.

15.    Within five (5) years of performing the testing required in Paragraphs 12 and 13 above, and every five years thereafter, Defendant shall conduct stack testing to determine compliance with MAERT limits. This periodic testing shall include testing of the RTO outlet for nitrogen oxide, carbon monoxide, particulate matter, VOCs and hazardous air pollutants ("HAPs") (acetaldehyde, acrolein, formaldehyde, methanol, phenol, propionaldehyde), and testing of the RCO outlet for particulate matter, VOCs, and HAPs (acetaldehyde, acrolein, formaldehyde, methanol, phenol, propionaldehyde). Testing shall occur while the facility operates in a manner representative of maximum actual emissions, i.e. maximum throughput achieved in practice at the Facility. Within one-hundred-eighty (180) days of the Date of Entry, Defendant will file an application requesting that TCEQ revise its Title V permit to include stack testing requirements that are at least as stringent as described in this Paragraph. The requirements of this Paragraph shall terminate upon incorporation of stack testing requirements in Defendant's Title V permit that are at least as stringent as described in this Paragraph.

16.     Within sixty (60) days from the Date of Entry, Defendant will host the first of six quarterly community public meetings. The purpose of the meetings is to facilitate communication between the community and Defendant. At the meetings, Defendant will update the community on Defendant's progress in installing the RCO and routing the green hammermill emissions to the RTO and will disclose Bypass Events that occurred since the prior meeting with the related causes. No meeting shall exceed two hours in length, and sufficient time shall be allocated to provide for the receipt of comments and questions from the public. Meetings shall be scheduled on a weekday evening after regular business hours and not during the week of a federal holiday. Defendant shall post a notice on its website and shall publish a notice in the *Tyler County Booster* announcing the time, date, and location of the quarterly meeting at least thirty (30) days before each meeting. Subsequent quarterly meetings shall take place no sooner than ninety (90) days after the prior meeting and no longer than one-hundred-and-twenty (120) days after the prior meeting.

17.     Within three months after the Date of Entry, Defendant shall establish and publicize a phone number and email address (or web portal) that community members can use to raise concerns regarding facility operations. Defendant shall compile concerns reported to the hotline for review at the community meeting referenced in Paragraph 16. Defendant shall include hotline information in the public notices described above.

18.     Beginning six months after Date of Entry, and every 6 months thereafter until termination, Defendant shall submit to Plaintiff a written report on its compliance with all requirements in in Sections III, IV, V, and VI of this Consent Decree.

19.     Defendant will not seek any extensions of the deadlines set forth in this Section absent a Force Majeure Event.

20.     Plaintiff shall not initiate or participate in any judicial or administrative proceeding, or submit written comments, challenging any permit changes necessary for Defendant to effectuate the commitments in this Section, including, but not limited to, the Facility's renewed and amended Title V permit and provisions of the Agreed Order, except that nothing in this Consent Decree shall preclude any Party from commenting on or objecting to any administrative, legislative or regulatory action, proposed action, approval or proposed approval that is inconsistent with the requirements of this Consent Decree. In no event shall a delay in permitting or other administrative action occasioned by any such comments or objections place Defendant in violation of this Consent Decree. Defendant agrees that its applications for permit changes necessary to effectuate the commitments in this Section shall not be packaged together with requests to make changes at the Facility that would result in an increase of any regulated air pollutant, except insofar as such increase relates to its compliance with the requirements of this Consent Decree. Defendant further agrees that if an application needed to obtain an approval or permit required to effectuate its obligations under this Consent Decree is bundled with an unrelated request, Defendant will request that the unrelated request be

separated if TCEQ represents to Defendant that such unrelated request is interfering with prompt issuance of the required permit or approval.

21.     Plaintiff agrees to formally notify TCEQ and EPA that it agrees that the Agreed Order should be entered and that it does not oppose issuance of the current draft Title V Permit or issuance of a permit authorizing Defendant to make the changes to the Facility needed for Defendant to comply with Paragraph 11.

## IV.     CIVIL PENALTY

22.     Within thirty (30) calendar days of entry of this Consent Decree, Defendant shall pay to the United States a civil penalty in the amount of $200,000, pursuant to guidance to be provided by the United States Department of Justice and the United States Attorney's Office for the Eastern District of Texas. At the time of payment, Defendant shall provide notice of payment to Plaintiff as provided in Section VII (Notices) of this Consent Decree.

23.     Failure to timely pay the civil penalty shall subject Defendant to interest accruing from the date payment is due until the date payment is made at the rate prescribed by 28 U.S.C. § 1961.

## V.     ENVIRONMENTAL BENEFIT PAYMENT

24.     Not later than thirty (30) days after the Date of Entry, Defendant shall deposit in the Court's registry the sum of $483,000 for use on one or more projects relating to the reduction, mitigation, and/or remediation of the effects of air pollution in East Texas (the "Environmental Benefit Payment"). The selected project[s] shall be mutually agreed to by the Parties and shall be expensed upon joint motion[s] of the

Parties. If the Parties fail to file such motion[s] within one year of entry of this Consent Decree, the Environmental Benefit Payment or any remainder thereof shall be forwarded from the Court's registry to the U.S. Department of Treasury as a civil penalty. None of the Environmental Benefit Payment shall be disbursed to Plaintiff.

### VI.    STIPULATED PENALTIES

25.    Beginning ninety (90) days after the Date of Entry, Defendant will pay a stipulated penalty to the United States Treasury for each Bypass Event that emits either particulate matter or VOCs. The penalty amount shall be on the basis of a dollar-per-pound of pollutant as follows: Defendant shall calculate the total quantity of particulate matter and VOCs emitted by any of the Facility's bypass stacks during the Bypass Event, and the stipulated penalty shall be in the amount of $100 for each pound of each pollutant emitted (per the equation set out below). Emissions shall be calculated consistent with the attached worksheets (Exhibit B).

[pounds of PM emitted during event] + [pounds of VOCs emitted during event] * $100 = penalty amount]

In no event shall Defendant's total responsibility for stipulated penalties under this Section exceed $200,000. Plaintiff agrees that it will not invoke the Dispute Resolution provisions of this Consent Decree to recover, or by any other means attempt to enforce, Defendant's payment of stipulated penalties totaling in excess of $200,000 under this Section.   Notwithstanding the foregoing, if Defendant's Bypass Events exceed amounts that in turn would exceed the payment of $200,000 under this Section, Plaintiff may utilize 42 U.S.C. § 7604(b) to issue a 60-day notice letter and then to initiate

a separate action as permitted under the Clean Air Act to address such excess Bypass Events. Defendant reserves all of its rights, defenses, arguments and remedies with respect to any such notice letter or separate action.

26.     Defendant shall accrue and pay on a monthly basis, without demand, all stipulated penalties due to the United States for Bypass Events occurring in the preceding thirty (30)-day period, unless Defendant elects within twenty (20) days of a Bypass Event to dispute the accrual of stipulated penalties in accordance with the Dispute Resolution provisions of this Consent Decree.

27.     Stipulated penalties shall be paid by electronic funds transfer ("EFT") to the United States Department of Justice, in compliance with current EFT procedures, referencing the civil action case name and case number referenced in the caption of this Consent Decree. The costs of such EFT shall be Defendant's responsibility. Payment shall be made in compliance with instructions provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Texas. Any funds received after 4:00 p.m. (CST) shall be credited on the next business day. At the time of payment, Defendant shall provide notice of payment to Plaintiff consistent with Section VII herein.

28.     Plaintiff shall be entitled to review on a quarterly basis the Facility's completed CAM sheets for the period of the preceding quarter. Should Plaintiff demonstrate that Defendant has not timely paid the stipulated penalty due and owing for any Bypass Event documented in the Facility's CAM sheets, Defendant shall pay the stipulated penalty within ten (10) days of the Parties' agreement that the stipulated

penalty is due and owing in accordance with the instructions set forth in Paragraph 27, with interest accruing from the date payment was due until the date payment is made at the rate prescribed by 28 U.S.C. § 1961.

29.     Disputes between the Parties regarding payment of stipulated penalties under this Section shall be resolved using the Dispute Resolution provisions of this Consent Decree. During the pendency of a dispute between the Parties regarding Defendant's obligation to pay stipulated penalties under this Section, Defendant shall deposit the disputed amount into the court registry.

30.     Defendant's obligation to pay stipulated penalties pursuant to this Section extends only to Bypass Events occurring between ninety (90) days after the Date of Entry and eighteen (18) months from the Date of Entry. This Section does not alter any rights, defenses, arguments, remedies, or sanctions available to Plaintiff or Defendant under applicable law with respect to Bypass Events occurring after eighteen (18) months following the Date of Entry.

## VII.   NOTICES

31.     All notifications, submittals, reports, and other information required by this Consent Decree ("Notices" or "Notice") shall be sent by email to the individuals at the addresses specified below, with receipt acknowledged by the individuals. If receipt is not acknowledged within seven (7) days of the emailed notice, the notice shall be sent to the individual by U.S. mail at the addresses specified below. Any change to the individuals to be noticed as set forth below shall be provided to the other Parties in writing by U.S. Mail and email.

<u>For the Plaintiff</u>:

Keri N. Powell
Powell Environmental Law
315 W. Ponce de Leon Ave., Suite 842
Decatur, GA 30030
Email: kpowell@powellenvironmentallaw.com

Aaron Isherwood
Coordinating Attorney
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
Email: aaron.isherwood@sierraclub.org

<u>For Defendant</u>:

Craig Stanfield
King & Spalding LLP
1100 Louisiana
Suite 4100
Houston, TX 77002
Email: cstanfield@kslaw.com

## VIII.   FORCE MAJEURE

32.     A "Force Majeure Event" for the purposes of the Consent Decree is

defined as any event arising from causes beyond the control of Defendant or any entity

controlled by Defendant (including, without limitation, Defendant's contractors and

subcontractors, and any entity in active participation or concert with Defendant), that

delays or prevents or can reasonably be anticipated to delay or prevent compliance with

the deadlines in Section III of this Consent Decree, and occurs despite Defendant's best

efforts to meet such deadlines. "Best efforts" means the diligence a reasonable person

would use under the circumstances. The requirement that Defendant exercise best

efforts to meet the deadline includes using best efforts to avoid any Force Majeure Event before it occurs, and using best efforts to mitigate the effects of any Force Majeure Event as it is occurring, and after it has occurred, such that any delay is minimized to the greatest extent possible using such efforts.

33.     Without limitation, unanticipated or increased costs or changed financial circumstances shall not constitute a Force Majeure Event. The absence of any administrative, regulatory, or legislative approval shall constitute a Force Majeure Event so long as Defendant demonstrates that, as appropriate to the approval: (a) it made timely and complete applications for such approval(s) to meet the deadline(s); (b) it reasonably complied with all requirements to obtain such approval(s); (c) it diligently sought such approval; (d) it diligently and timely responded to all requests for additional information; and (e) without such approval, Defendant would be required to act in violation of law to meet one or more of the deadlines set forth in this Consent Decree.

34.     If Defendant seeks to assert a Force Majeure Event, Defendant shall notify Plaintiff in writing within thirty (30) days of the time Defendant first knew that the event is likely to cause a delay (but in no event later than the deadline itself). Within thirty (30) days of such notice, Defendant shall provide in writing to Plaintiff a report containing: (a) an explanation and description of the reasons for the delay; (b) the anticipated length of the delay; (c) a description of the activity(ies) that will be delayed; (d) all actions taken and to be taken to prevent or minimize the delay; (e) a timetable by which those measures will be implemented; and (f) a schedule that fully describes when

16

Defendant proposes to meet any deadlines in this Consent Decree which have been or will be affected by the claimed Force Majeure Event. Defendant shall include with any notice documentation sufficient to support its claim of a Force Majeure Event. At all times Defendant shall have the burden of proof to establish each element of its asserted Force Majeure Event.

35.     If Plaintiff agrees that a Force Majeure Event has occurred, the Parties shall stipulate to an extension of the deadline for the activity(ies) as is necessary to complete the activity(ies). Plaintiff shall take into consideration, in stipulating to any new deadline(s), evidence presented by Defendant relating to weather, outage schedules and remobilization requirements. If Plaintiff does not agree in its sole discretion that some or all of the delay or anticipated delay has been or will be caused by a Force Majeure Event, it will notify Defendant in writing of this decision within twenty (20) days after receiving Defendant's report alleging a Force Majeure Event. The Parties shall spend ten (10) days making a good faith attempt to resolve the matter. If the parties fail to resolve the matter within the ten (10)-day good faith negotiation period, then on the fourteenth day thereafter, each party will file with the Court its position with respect to Defendant's asserted Force Majeure Event and proposed remedy. Such briefing statements will be no more than 15 pages in length, and no further briefing shall be allowed. In such filings, each party shall alert the Court to this provision in the Consent Decree and request that the Court expeditiously resolve the existence and remedy of the asserted Force Majeure Event.

36.     No party shall be entitled to monetary damages or penalties for resolution of any asserted Force Majeure Event governed by this Section. The sole remedy available for resolution of any asserted Force Majeure Event governed by this Section, in lieu of any monetary damages, penalties, fees, costs or expenses, shall be specific performance applicable to any deadlines subject to an asserted Force Majeure Event. The dispute resolution provisions in Section IX of this Consent Decree shall not apply to disputes concerning asserted Force Majeure Events.

37.     Failure by Defendant to fulfill in any way the notification and reporting requirements of this Section shall constitute a waiver of any claim of a Force Majeure Event as to which proper notice and/or reporting was not provided.

38.     Any extension of one deadline based on a particular incident does not necessarily constitute an extension of any subsequent deadline(s) unless agreed to by the Parties.

39.     If one or more Force Majeure Events delays, or is proposed by Defendant to delay, Defendant's compliance with a deadline in Section III of this Consent Decree more than six (6) months, Plaintiff may seek further relief from the Court to fulfill the purposes of this Consent Decree.

## IX.    DISPUTE RESOLUTION

40.     Other than the deadlines in Section III of this Consent Decree that are expressly identified as subject to the Force Majeure provisions in Section VIII, the dispute resolution procedure provided by this Section shall be the sole and exclusive mechanism to resolve all other disputes arising under this Consent Decree, provided

18

that the Party making such application has first made a good faith attempt to resolve the matter with the other Party.

41.     The dispute resolution procedure required herein shall be invoked by a Party giving written notice to the other Party advising of a dispute. The notice shall describe the nature of the dispute and shall state the noticing Party's position with respect to such dispute. The Party receiving such a notice shall acknowledge receipt of the notice, and the Parties shall expeditiously schedule a meeting to discuss the dispute informally not later than fourteen (14) days following receipt of such notice. The Party invoking the dispute resolution procedure will provide the other Party with an opportunity to remedy any asserted violation of the Consent Decree within thirty (30) days of such meeting, or, in the case of a claimed breach which cannot be reasonably remedied within a thirty (30) day period, an opportunity to take reasonable action to remedy the claimed violation within such thirty (30) day period and, thereafter, diligently complete the activities necessary to remedy the claimed breach.

42.     Disputes submitted for resolution under this Section shall, in the first instance, be the subject of informal negotiations among the Parties. Such period of informal negotiations shall not extend beyond forty-five (45) calendar days from the date of the first meeting among the Parties' representatives unless they agree to shorten or extend this period.

43.     If the Parties are unable to reach agreement during the informal negotiation period, either Party may file with this Court a petition that describes the nature of the dispute. The responding party shall file its response with this Court within

twenty-one (21) days. Where the nature of the dispute is such that a more timely resolution of the issue is required, the time periods set out in this Section may be shortened upon motion of one of the Parties.

44.     This Court shall not draw any inferences nor establish any presumptions adverse to either Party as a result of invocation of this Section or the Parties' inability to reach agreement.

45.     The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes. The Parties, in their initial filings with the Court under this Section shall state their position regarding what the applicable standard of law should be for resolving the particular dispute.

46.     No party shall be entitled to monetary damages or penalties for any breach of this Consent Decree or resolution of any dispute governed by this Section. Except for the payment of stipulated penalties pursuant to Section VI of this Consent Decree, the sole remedy for any breach of this agreement or resolution of any dispute governed by this Section, in lieu of any monetary damages, penalties, fees, costs, or expenses, will be specific performance.

## X.     SALES OR TRANSFERS OF OWNERSHIP INTERESTS

47.     If Defendant proposes to sell or transfer its ownership interest in the Facility before termination of this Consent Decree, Defendant shall notify Plaintiff of such proposed sale or transfer at least thirty (30) days before such proposed sale or transfer; shall advise the purchaser, successor-in-interest, or transferee in writing of the existence of this Consent Decree prior to such sale or transfer; shall require as a

20

condition of such proposed sale or transfer that the purchaser, successor-in-interest, or

transferee shall be bound by the terms of the Consent Decree applicable to Defendant

and shall submit with regard to any action or proceeding under the Consent Decree,

generally and unconditionally, to the jurisdiction of this Court, and shall require that

the purchaser, successor-in-interest, or transferee provide written confirmation to

Plaintiff pursuant to Section VII (Notices) of this Consent Decree acknowledging the

terms of the Consent Decree and that the purchaser, successor-in-interest, or transferee

will be bound by those terms. No further approval by the Court will be required for the

sale or transfer of ownership interest pursuant to the terms of this Paragraph. Plaintiff

shall maintain the confidentiality of any information in such notice that is identified and

supported by Defendant as business confidential in compliance with 40 C.F.R. Part 2.

## XI.    MODIFICATION

48.    Except as provided in Section X (Sales or Transfers of Ownership

Interests), this Consent Decree may be modified only by a subsequent written

agreement signed by all the Parties. Where the modification constitutes a material

change to any term of this Consent Decree, it shall be effective only upon approval by

the Court.

## XII.    EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS

49.    This Consent Decree represents full and final settlement among the

Parties. This Consent Decree resolves, and Plaintiff releases and waives, any and all

civil claims, causes of action, demands, actions and/or rights of action, that Plaintiff

may have against Defendant for violations alleged in the Complaint, First Amended

Complaint, and Second Amended Complaint occurring on and before the Date of Entry of this Consent Decree by the Court.

50.     The Parties further agree that the Consent Decree resolves, and Plaintiff releases and waives, any and all civil penalties and injunctive relief related to alleged violations of the Act or regulatory provisions alleged in the Complaint, First Amended Complaint, and Second Amended Complaint that may have occurred from the date the Complaint was filed through eighteen months from the Date of Entry, except as expressly provided in Paragraph 25.

51.     Notwithstanding termination of this Consent Decree pursuant to Section XV, the requirements of this Paragraph are permanent and shall survive termination of this Consent Decree.

52.     Plaintiff shall not fund any third-party litigation involving any claims settled, released and waived by this Consent Decree.

53.     The failure of any Party to comply with any requirement contained in this Consent Decree will not excuse the obligation to comply with other requirements contained herein.

### XIII.   ATTORNEYS FEES AND COSTS

54.     Plaintiff shall file any motion for fees and costs pursuant to 42 U.S.C. § 7604(d) within thirty (30) days of the Date of Entry. Plaintiff agrees that it will not file such motion for fees and costs if the Parties reach an agreement resolving Plaintiff's claim for fees and costs prior to thirty (30) days of the Date of Entry.

## XIV.   RETENTION OF JURISDICTION

55.     Until termination of this Consent Decree, this Court shall retain jurisdiction over both the subject matter of this Consent Decree and the Parties to this Consent Decree to enforce the terms and conditions of this Consent Decree. Following termination, the Court shall retain jurisdiction to enforce the provisions and obligations set forth herein that are permanent.

## XV.   TERMINATION

56.     After a period of no less than 18 months from the Date of Entry, and after the requirements in Paragraphs 9-13 and 16 of this Consent Decree have been met, Defendant may move the Court to terminate the Consent Decree provided that Defendant certifies that it is in compliance with all the requirements of the Consent Decree. In no event may the Consent Decree be terminated if Defendant has not performed testing as described in Paragraphs 12-13 demonstrating the Facility's compliance with the MAERT limits and emission performance levels specified in the relevant TCEQ permits. Termination of this Consent Decree shall not affect the requirements of Paragraph 15, nor any matter expressly set forth in this Consent Decree that is to survive as an agreement among the Parties.

## XVI.   LODGING AND ENTRY OF CONSENT DECREE

57.     The Parties agree to cooperate in good faith to obtain the Court's review and entry of this Consent Decree.

58.     Pursuant to 42 U.S.C. § 7604(c)(3), this Consent Decree will be lodged with the Court and simultaneously presented to the United States for its review and

comment for a period of forty-five (45) days. After the review period has elapsed, the Consent Decree may be entered by the Court. If the Consent Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before the Date of Lodging.

59.     The Parties agree to cooperate in good faith to expeditiously obtain EPA and United States Attorney General (Department of Justice, or "DOJ") review and District Court approval. If DOJ or EPA comments upon the terms of this Consent Decree, the Parties agree to discuss such comments to support the entry of the Consent Decree or to make any revisions to the Consent Decree as the Parties determine may be appropriate.

## XVII.  SIGNATORIES

60.     Each undersigned representative of a Party to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this Consent Decree.

61.     The Parties hereby agree not to oppose entry of this Consent Decree by this Court or challenge any provision of this Consent Decree.

## XVIII. COUNTERPARTS

62.     This Consent Decree may be signed in counterparts.

THE UNDERSIGNED Parties enter into this Consent Decree and submit it to this

Court for approval and entry.

SO ORDERED:

**SIGNED this 28th day of January, 2022.**


_____
Michael J. Truncale
United States District Judge

25

FOR PLAINTIFF SIERRA CLUB:

_____
[NAME]

Date: _November 12, 2021_

25

FOR DEFENDANT WOODVILLE PELLETS, LLC:

_Peil Kujoran, CEO_   Date: _13/11/2021_